# United States Court of Appeals
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

LYLE W. CAYCE
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE
NEW ORLEANS, LA 70130

FILED
2015 AUG 28 PM 2:18

August 28, 2015

Ms. Jeannette Clack
Western District of Texas, El Paso
United States District Court
525 Magoffin Avenue
Room 108
El Paso, TX 79901-0000

    No. 14-50252    USA v. David Jordan
                       USDC No. 3:12-CR-641-1

Dear Ms. Clack,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

                             Sincerely,

                             LYLE W. CAYCE, Clerk

                             By: _____
                             Shawn D. Henderson, Deputy Clerk
                             504-310-7668

cc:
    Ms. Mara Asya Blatt
    Mr. Joseph H. Gay Jr.
    Ms. Angela Sandoval Raba
    Ms. Mary Stillinger

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 14-50252

D.C. Docket No. 3:12-CR-641-1

United States Court of Appeals
Fifth Circuit
**FILED**
August 6, 2015
Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

    Plaintiff - Appellee

v.

DAVID JORDAN,

    Defendant - Appellant

Appeal from the United States District Court for the
Western District of Texas, El Paso

Before JOLLY, HIGGINBOTHAM and DAVIS, Circuit Judges.

JUDGMENT

This cause was considered on the record on appeal and the briefs on file.

It is ordered and adjudged that the judgment of the District Court is affirmed.

Certified as a true copy and issued
as the mandate on Aug 28, 2015

Attest: *Lyle W. Cayce*
Clerk, U.S. Court of Appeals, Fifth Circuit

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-50252

United States Court of Appeals
Fifth Circuit
**FILED**
August 6, 2015
Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

        Plaintiff-Appellee

v.

DAVID JORDAN

        Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:12-CR-641

Before JOLLY, HIGGINBOTHAM and DAVIS, Circuit Judges.

PER CURIAM:*

  David Jordan appeals his conviction under 18 U.S.C. § 922(g)(1) for being a felon in possession of a firearm. We affirm.

## I. BACKGROUND

  Jordan was convicted of possession of a controlled substance, a felony, in 2003, and sentenced to four-and-one-half-years imprisonment. In April 2009, Jordan's nephew, Jeremy Jordan ("Jeremy"), owned a Glock handgun that he inherited from a relative. Jeremy testified at trial that he told Jordan that he

---

 * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

had no use for the weapon and wished to sell it. Jordan then told Jeremy he had a friend who wanted to buy it. On April 13, 2009 Jordan contacted Hector Ramirez, a confidential informant for the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), informing him that he knew of a Glock handgun for sale. Jordan requested $700 for the weapon and Ramirez countered with $600, which the parties settled upon.

The firearm transaction took place on April 15, 2009. Ramirez chose the initial location of sale, but Jordan changed the location on two occasions during the time Ramirez was driving to meet Jordan (the second location change was initiated by Jeremy). Ramirez met Jordan, who arrived alone in a GMC Denali, at a 7-11 gas station. Ramirez handed $600 to Jordan. Upon receiving the money, Jordan nodded in the direction of a gray Chrysler 300 driven by Jeremy, which had been parked nearby at the gas station. Jordan then left the scene. Ramirez then walked over to the Chrysler where Jeremy handed him the weapon, which was inside a Ziploc bag, nested inside a Ritz cracker box, this inside a Walmart bag.

Jeremy testified at trial that he did not know who the buyer was until the sale, and that Jordan alone arranged the sale. Jeremy testified that he himself selected the final location for the sale (communicated to Ramirez through Jordan), but left the negotiation of the price up to Jordan within an acceptable range determined by Jeremy. He also testified that Jordan gave Jeremy the money after the transaction.

At the close of the Government's case, Jordan moved for a judgment of acquittal claiming the Government presented insufficient evidence to support a theory of constructive possession. The district court denied the motion. At the close of all the evidence Jordan renewed this motion, which was again denied. The jury convicted Jordan of being a convicted felon in possession of a firearm. Jordan moved for a judgment notwithstanding the verdict. The court

denied the motion and imposed a below-guidelines sentence of 37 months of imprisonment and a three-year term of supervised release.

Jordan timely appeals.

## II. DISCUSSION

### A.

18 U.S.C. § 922(g)(1) provides that:

"It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

It is well established that "possession may be actual or constructive."[1] Constructive possession is defined as "ownership, dominion, or control over the contraband" and may be sole or joint.[2] One has control when he has "the power or authority to manage, direct, or oversee."[3] The word direct means "to cause (something or someone) to move on a particular course" or to "guide (someone or something)."[4]

### B.

The standard of review for assessing a sufficiency of the evidence challenge in a criminal case is whether any "reasonable trier of fact could have

---

[1] See *United States v. Hagman*, 740 F.3d 1044, 1048 (5th Cir. 2014) (citing *United States v. Patterson*, 431 F.3d 832 (5th Cir. 2005)).

[2] *United States v. Mergerson*, 4 F.3d 337, 349 (5th Cir. 1993) (citing *United States v. Smith*, 930 F.2d 1081 (5th Cir. 1991)).

[3] BLACK'S LAW DICTIONARY 403 (10th ed. 2014).

[4] *Id.* at 556.

3

found that the evidence established guilt beyond a reasonable doubt."[5] Furthermore, "a court views all evidence and all reasonable inferences drawn from it in the light most favorable to the government."[6] This standard of review applies to direct and circumstantial evidence.[7]

## C.

Jordan argues that the evidence was insufficient to support his conviction for constructive possession of the Glock pistol. We disagree. Jordan managed the sale of the firearm. He solicited the business of the buyer, haggled for the final sales price, was in sole communication with the buyer, and was handed the money for the firearm. While he did not choose the final sale location, hand the gun to Ramirez, or keep the money, the evidence of his involvement in the sale is similar to that in *United States v. Virciglio*, 441 F.2d 1295 (5th Cir. 1971), and is nearly identical to that in *United States v. Nungaray*, 967 F.3d 1114 (9th Cir. 2012).

In *Nungaray*, the defendant got into the passenger seat of the buyer's vehicle with the buyer while a third-party, as directed by the defendant via cellphone, put the firearms in the trunk.[8] Next the buyer exited the vehicle to check the guns while the defendant remained in his seat. When the buyer returned to the driver seat, he gave the defendant the money for the guns. The defendant testified the guns belonged to his elderly, disabled friend who

---

[5] *Mergerson*, 4 F.3d at 341 (quoting *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982) (en banc)).

[6] *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)).

[7] *Id.*

[8] *Id.* at 1115-16.

needed the money.[9] He further testified that he completed the sale for her and gave her the money the buyer handed him the next day.[10]

Jordan points out three facts in *Nungaray* not found in today's case. First, in *Nungaray*, the defendant asked the buyer to come back to his house to get the guns (which the buyer refused). Jordan argues that this demonstrates possession. But the court's reasoning in *Nungaray* is focused elsewhere. In its holding, the *Nungaray* court states:

> For the reasons stated below, we conclude that the district court did not err in finding constructive possession by a preponderance of the evidence when Nungaray initiated contact with the buyer, negotiated the gun price, minutely directed the gun delivery and sale location, was present at the sale, and took payment from the buyer after he inspected the delivered guns.[11]

Next, Jordan argues that there is a material difference between the *Nungaray* defendant's being in the buyer's car with the weapons in the trunk and Jordan being across the convenience store parking lot from the gun. This is a superficial variance based on physical proximity and is of little relevance to this court's inquiry into constructive possession. "Mere proximity to contraband . . . [is] insufficient to show constructive possession."[12] What is important is that both defendants were directing the disposition of the weapons in terms of arranging the sale and assuring completion of the sale.

Finally, Jordan points to the fact in *Nungaray* that a gun was found at the defendant's house by authorities at some point after the sale. But possession of this gun was a separate charge and therefore only weak evidence

---

[9] *Id.* at 1116.

[10] *Id.*

[11] *Id.* at 1116-17.

[12] *Id.* at 1117 (citing *United States v. Terry*, 911 F.2d 272, 279 (9th. Cir. 1990)).

5

for, if not irrelevant to, the charge regarding the sale of the firearm the defendant was charged with possessing. And the court did not consider it as part of the necessary evidence for convicting the defendant for the sale.

The very recent Supreme Court decision in *Henderson v. United States*, 135 S.Ct. 1780 (2015), incidentally addresses the issue in this case. In *Henderson*, the principle question was whether a convicted felon maintained possessory interest in firearms he owned before conviction and had a right to alienate those weapons after release without violating 18 U.S.C. § 922(g)(1).[13] The Supreme Court held that a convicted felon does maintain such an interest and has a right to alienate the firearms, as long as such alienation is heavily court supervised.[14] In footnote 3 of the opinion the Court makes clear that while such court supervised transfers of guns are permissible, pursuant to the right to alienate one's property, direct management of a firearm sale by a convicted felon is not.[15] The Court then cited both *Nungaray* and *Virciglio*. The Court stated that in such a case "[t]he felon's management of the sale thus exemplified, and served as evidence of, his broader command over the guns' location and use—the very hallmark of possession."[16]

### D.

Jordan makes a number of additional arguments which we will consider below:

1. Jordan contends first that the absence of a statute explicitly prohibiting a convicted felon from selling a firearm is evidence that Congress does not intend such conduct to be illegal. Jordan points out that 18 U.S.C §

---

[13] *Id.* at 1783.

[14] *Id.* at 1786-87.

[15] *Id.* at 1785 n.3.

[16] *Id.*

6

922(j) makes it an offense to *sell* a stolen firearm, and that 18 U.S.C § 922(g)(1) makes it an offense for a convicted felon to *possess* a firearm. Jordan argues that if Congress intended to criminalize the sale of a firearm by a convicted felon, it would have included the word *sell* in § 922(g)(1), rather than, or in addition to, the word *possess*. By this logic, Jordan contends that since his sale of the gun is not explicitly proscribed by § 922(g)(1), the sale must be permissible.

We are not persuaded. Controlling language from *United States v. Beason*, 690 F.2d 439 (5th Cir. 1982), undermines this reasoning: "[A] person cannot escape conviction [based on constructive possession] by avoiding physical contact with the device if he has power and intention to exercise control over the object, and plans its disposition or can assure delivery either directly or through others."[17] Even though § 922(g)(1) uses the word *possess* rather than *sell*, *Beason* indicates that effecting the sale of an object can constitute constructive possession. The specific action of sale fits into the broader action of the planning of a firearm's "disposition" and "[assuring] delivery either directly or through others."

Applying this language to the present case, a reasonable fact finder could have found the following: (1) that Jordan possessed the "power . . . to exercise control over the [firearm]" considering that he set up the sale and directed the sale forward through the final exchange, i.e., nodding at Jeremy as a tacit go-ahead to hand the gun to Ramirez after he received the money; (2) that he possessed the "intention to exercise control over the [firearm]" because his conduct (setting up and ensuring the execution of the transaction) is indicative of his having a conscious objective to do so; (3) that by arranging the

---

[17] *Id.* at 443 (citing *Virciglio*, 441 F.2d at 1298).

transaction with Ramirez, Jordan planned the "disposition" of the firearm and effected its sale; and (4) that by having Jeremy at the scene with the gun ready for the transaction, who in turn gave Ramirez the gun, Jordan "[assured] delivery" of the gun "through [another]."

2. Jordan also argues that a firearm transaction alone does not suffice as evidence of constructive possession. In support of this argument, Jordan cites *United States v. Hagman,* in which a felon employee of a gun store attempted to arrange a transaction between the store owner and burglars who stole the owner's guns, but ultimately failed.[18] We held that attempting to arrange a transaction does not necessarily imply dominion and control over the sought after goods, and therefore does not constitute constructive possession.[19] In reaching this conclusion, we noted the lack of a transaction and lack of proof of control over the movement of the weapons.[20] Here, a full firearm transaction transpired, not merely an attempt at arranging one. Except for the selection of the location and the general price range for the weapon the transaction was fully arranged by Jordan.

3. Lastly, Jordan argues that the transaction in the instant case does not constitute constructive possession, because Jordan left the scene before Jeremy handed the gun to Ramirez; whereas in *United States v. Hood,* 507 F. App'x. 859, 861 (11th Cir. 2013), the defendant found to be in constructive possession of a weapon was actually present at the exchange of the firearms. This argument is meritless. Again, *Beason* deflates this argument: "[A] person cannot escape conviction [based on constructive possession] by avoiding physical contact with the device if he has power and intention to exercise

---

[18] 740 F.3d at 1046.

[19] *Id.* at 1050.

[20] *Id.*

8

control over the object, and plans its disposition or can assure delivery either directly or through others."[21]

### III. CONCLUSION

Viewing all evidence and reasonable inferences drawn from it in the light most favorable to the government, a reasonable trier of fact could have found that the evidence established Jordan's guilt under 18 U.S.C. 922(g)(1).

The conviction is therefore affirmed.

---

[21] 690 F.2d at 443.

9